**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

FIFTH AVENUE OF LONG ISLAND
REALTY ASSOCIATES d/b/a
AMERICANA MANHASSET,

                               Plaintiff,                         **REPORT AND**
                                                           **RECOMMENDATION**

            - against -

                                                 CV 08-0384 (LDW) (AKT)

CARUSO MANAGEMENT
COMPANY LTD. d/b/a CARUSO
AFFILIATED d/b/a CARUSO AFFILIATES,

                               Defendant.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

       Plaintiff Fifth Avenue of Long Island Realty Associates, d/b/a Americana Manhasset ("Plaintiff or Fifth Avenue"), brings this action to prevent Defendant Caruso Management Company, Ltd. d/b/a Caruso Affiliated d/b/a Caruso Affiliates ("Defendant" or "Caruso") from infringing and diluting the trademarks Americana™ and Americana Manhasset™. Plaintiff asserts claims for (1) trademark infringement pursuant to 15 U.S.C. § 1114(1), (2) violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (3) violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), (4) trademark dilution under the New York General Business Law § 360-1, (5) violation of New York General Business Law §§ 349 and 350, (6) common law trademark infringement and unfair competition, and (7) unjust enrichment. Plaintiff has moved for a Preliminary Injunction enjoining Defendant from unlawfully infringing Plaintiff's marks.

       Presently before the Court is Defendant's motion to dismiss all claims asserted against it in this Court on the grounds that the Court lacks personal jurisdiction over Defendant and

Defendant's motion to transfer venue. Judge Wexler referred this matter to me to issue a Report and Recommendation. Although in the specific circumstances of this case, none of these issues are simple, I respectfully recommend to Judge Wexler that Defendant's motion to dismiss on the basis of personal jurisdiction, improper venue and failure to join an indispensable party be DENIED, for the reasons stated below. I further recommend to Judge Wexler that Defendant's motion to transfer venue be DENIED.

## I.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed a claim for trademark infringement in this Court and simultaneously moved for a preliminary injunction, enjoining Defendant from continued use of the Americana™ trademark. When the parties appeared before Judge Wexler on the injunction application, Judge Wexler ordered the parties to engage in expedited discovery on the issues of personal jurisdiction, venue and transfer. Following expedited discovery, an Amended Complaint was filed [DE 10]. Defendant moved to dismiss the Amended Complaint [DE 19]. According to Defendant, the Amended Complaint should be dismissed because (1) the Court lacks personal jurisdiction over Defendant; (2) venue is improper in the Eastern District of New York; and (3) Caruso Property Management ("Caruso PM") is an indispensable party in whose absence this case should not proceed.

In opposition to the motion to dismiss, Plaintiff argues that Defendant Caruso has contacts with the forum sufficient to create both "general" and "specific" personal jurisdiction because (1) Defendant opened an office in Manhattan in June 2007, and (2) Defendant committed tortious acts outside the state sufficient to cause injury within the state. Plaintiff contends that venue is proper in the Eastern District of New York because Caruso resides within the state where its contacts are and where the injury occurred. Further, Plaintiff maintains that

Defendant has not satisfied its burden to demonstrate that the case should be transferred to California because the witnesses in California identified do not have information relevant to this action.  Finally, Plaintiff argues that Caruso PM, an affiliated entity, is not an indispensable party because it abandoned its federal trademark application for Americana at Brand in 2007.  I heard oral argument on Defendant's motion to dismiss and Plaintiff subsequently filed its renewed motion for a Preliminary Injunction.

Following argument on the motion to dismiss, both sides submitted additional declarations seeking to clarify and/or support their respective positions.  On May 9, 2008, Defendant submitted the Supplemental Declaration of Todd Russell to "confirm and clarify certain information" discussed during oral argument relating to the space leased by Defendant in New York. [DE 32].  Plaintiff filed five declarations [DE 33-37].  Three of these declarations, -- those of Brad Brewster, Kay Peters and Peter Niemetz – were submitted to "reflect experiences by individuals who encountered the AMERICANA AT BRAND mark and were actually confused by Defendant's use of the mark."  Plaintiff's May 23, 2008 Letter [DE 40].  The declarations of Andrea Sanders and Valyncia Simmons were submitted to "highlight the potential for consumer confusion."  *Id.* at 1.  Both of these declarations attach documents discussing Americana at Brand.   Defendant moves to strike the declarations on the grounds that they are untimely and unrelated to issues before the Court [DE 39].

## II.   **FACTUAL BACKGROUND**

Plaintiff Fifth Avenue is a New York limited liability partnership headquartered in Manhasset.  Fifth Avenue is the owner of Americana Manhasset™ and has trademark registrations covering both Americana™ and Americana at Manhasset™.  According to Plaintiff,

Defendant is perpetrating the infringement of Plaintiff's mark by promoting Defendant's Americana at Brand shopping center in national media and through internet web sites.

Defendant Caruso Management Company, Ltd. is a California limited liability partnership based in Los Angeles, California. Caruso provides property management services and "liquid asset management services" to various entities, all located in California. With respect to Americana at Brand, Caruso has provided construction management services. However, prior to Americana at Brand's opening, Caruso did not provide any property management services or liquid asset management services. It was anticipated that Caruso would provide property management services once Americana at Brand opened. Dep. Of David Liston at page 70, attached as Exh. C to the Declaration of John C. Rawls. Executive Vice President of Leasing, Todd Russell, is responsible for visiting prospective retailers and negotiating leases for the retailers to become tenants in Caruso's shopping centers, including Americana at Brand. Defendant Caruso is one of a host of privately held entities owned or controlled by real estate developer Rick Caruso.

A.      **New York Office Space**

Defendant's stance that it is not present in New York lies at the heart of its motion to dismiss. Plaintiff claims that Defendant <u>is</u> present and focuses its argument almost exclusively on the short-term lease entered into by Defendant to facilitate Mr. Russell's activities as Executive Vice President of Leasing with respect to New York-based retailers. Specifically, in June 2007, Defendant opened an office at 45 Rockefeller Center. According to Defendant, this 180 square foot office space consists of a desk, credenza and table. None of Mr. Russell's files are maintained in the office and no other employee works there full or part-time. Defendant asserts that this space is empty 90% of the time.

4

Plaintiff takes quite a different view of this office space.  Plaintiff argues that Caruso's press releases tout its New York office as "a strategic expansion for the company," stating that "the opening of a New York office . . . establishes a pivotal location for the company in the hub of the U.S. fashion industry," allowing Caruso to "expand on [its] existing relationships with top industry innovators in fashion and retail," have "closer contact with premier fashion houses as well as the latest retail pioneers" and "explore real estate opportunities on the East Coast."  So far, nine New York retailers have been announced as future tenants at Americana at Brand. In his Supplemental Declaration, Todd Russell states that the address of the space leased in New York by Defendant is indeed noted on Mr. Russell's business cards and has been listed on press releases issued by the Company.  *Id.* at ¶ 2.  In addition, the space in New York contains a telephone.  Mr. Russell represents, however, that he has "neither negotiated nor executed any leases for The Americana at Brand or any other Caruso-related property while in New York." *Id.*  at ¶ 4.  By letter dated June 4, 2008, Defendant's counsel advised the Court that Caruso terminated its lease on its New York space.  The lease expired on August 31, 2008 and Defendant vacated the premises early, on June 9, 2008 [DE 42].

### B.  Prior Litigation Between The Parties

This action is not the first dispute between the parties with respect to Defendant's use of the name Americana at Brand.  In December 2004 Caruso PM filed an application with the United States Patent & Trademark Office for federal registration of the Americana at Brand mark.  Silva Decl. At ¶ 16.  Plaintiff opposed that application.  On February 8, 2006, Fifth Avenue sent a letter to a real estate broker stating that the domain name he had registered, <americanaatbrandcondominiums.com> infringed Fifth Avenue's rights in the Americana™ mark.  Shortly thereafter, Caruso PM filed suit against Fifth Avenue in the Central District of

California, seeking a declaration that Americana at Brand does not infringe the Americana Manhasset™ mark. Fifth Avenue successfully moved to dismiss that action on the basis of a lack of jurisdiction. Caruso PM appealed the Court's decision but then suddenly withdrew its appeal in January 2007. Likewise, Caruso PM withdrew its request for federal registration of the Americana at Brand mark and asserted that it had the right to use the mark in California based upon its state registration of the mark approved on March 29, 2006. Silva Decl. At ¶ 22. Fifth Avenue responded by sending a letter putting Caruso on notice that Fifth Avenue had nationwide rights to the use of the term Americana and that Caruso was infringing its mark.

## III.   STANDARD OF REVIEW

### A.   Motion To Dismiss

Defendant has moved to dismiss this action for lack of personal jurisdiction and for failure to join an indispensable party. "On a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(6), the Court may consider the allegations in the Complaint and in affidavits submitted in support of the motion, construing all facts in the light most favorable to the plaintiffs." *Law Debenture v. Maverick,* No. 06 Civ. 14320, 2008 WL 4615896, at * 3 (S.D.N.Y. Oct. 15, 2008) (citing *Whitaker v. American Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001) ("'[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in plaintiff's favor.'")). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *See, e.g.*, *Best Van Lines, Inc. v. Walker,* 490 F.3d 239 (2d Cir. 2007).

However, "[a] prima facie showing of jurisdiction will not suffice . . . where a plaintiff seeks preliminary injunctive relief. A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him." *Visual Sciences, Inc. v.*

*Integrated Communications, Inc.,* 660 F.2d 56, 59 (2d Cir. 1981). Plaintiff must establish "at least a reasonable probability of ultimate success on the question of the court's in personam jurisdiction over" defendant. *Weitzman v. Stein,* 897 F.2d 653, 658-59 (2d Cir. 1990). When an evidentiary hearing is held, "the plaintiff must demonstrate jurisdiction by a preponderance of the evidence." *See Robinson v. Overseas Military Sales, Corp. ,* 21 F.3d 502, 507 (2d Cir. 1994); *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428 (S.D.N.Y. 2003). Once the parties have conducted discovery "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by [the ultimate trier of fact], would suffice to establish jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 566 (2d Cir. 1996) (quoting *Ball v. Metallurgie Hoboken-Overpelt*, 902 F.2d 194, 197 (2d Cir. 1990)).

"In a federal question case, where the defendant resides outside the forum state, federal courts apply the forum state's personal jurisdiction rules." *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (citing *PDK Labs., Inc. v. Friedlander,* 103 F.3d 1105, 1108 (2d Cir. 1997)); *see also Chanel, Inc. v. Doubinine,* No. 04-cv-4099, 2008 WL 4449631 (E.D.N.Y. Oct. 2, 2008). Thus, New York law is applied here to determine the question of jurisdiction.

### B.     Motion To Transfer Venue

In determining whether to transfer venue under 28 U.S.C. § 1404(a), "courts employ an individualized, case-by-case consideration of convenience and fairness." *Posven, C.A. v. Liberty Mutual Ins. Co.,* 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004) (internal citations omitted). This determination is within the "sound discretion" of the district court. *Id.* In deciding a motion to transfer venue, "[t]he plaintiff's choice of forum is entitled to substantial weight and will not be

disturbed lightly." *Totilo v. Herbert,* 538 F. Supp. 2d 638, 640 (S.D.N.Y. 2008) (quotation omitted). Only where "the balance of convenience and justice weigh heavily in favor of defendant's [requested] forum" will a court override this choice. *See Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge North Am., Inc.,* 474 F. Supp. 2d 474, 480 (S.D.N.Y. 2007) (quotation omitted).

## IV.   DISCUSSION

### A.   Motion To Strike

Defendant moves to strike five Declarations submitted by Plaintiff on May 19, 2008, arguing that the Declarations are untimely and unrelated to the issues pending before the Court. Plaintiff does not dispute the fact that this Court did not explicitly grant permission to submit new declarations nor that the declarations are untimely. Instead, Plaintiff argues that it is providing the Court with evidence obtained after the hearing which is relevant to the jurisdictional issues. Plaintiff contends that the declarations provide evidence of actual confusion demonstrating harm to Plaintiff's trademark, which is deemed to have occurred where the trademark owner resides. Neither party has cited any authority directly relevant with regard to this motion to strike.

"Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *See Zinaman v. USTS N.Y.S., Inc.* 798 F. Supp. 128, 135 (S.D.N.Y. 1992). "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules" when considering a motion to strike. *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Slue v. New York Univ. Med. Ctr.,* 409 F. Supp.2d 349 (S.D.N.Y. 2006) (denying motion to strike because "defendants establish no prejudice from any technical violations of the Federal Rules

with respect to the . . . affidavits submitted by Plaintiff").  While Plaintiff did not seek prior

approval before filing the declarations, Defendant has had the opportunity to refute the

statements contained therein and can claim no undue prejudice from my consideration of this

additional evidence.  Accordingly, Defendant's motion to strike is DENIED.

**B.      Motion To Dismiss For Lack Of Personal Jurisdiction**

With respect to Defendant's motion to dismiss on the basis of a lack of personal

jurisdiction, Defendant argues that it "(i) has never been licensed or authorized to do business in

New York; (ii) has never employed any residents of New York; (iii) has never had any bank

accounts in New York; (iv) has never contracted to supply any goods or services, or sold any

goods, in New York, and (v) never derived any revenue from New York."   According to

Defendant, its sole connection to New York is the 180 square foot office space it rents on a short

term (3 month) basis.  Plaintiff argues that this office space, visited by Executive Vice-President,

Todd Russell an average of 3-4 times per month is sufficient to create personal jurisdiction.

**1.      *General Jurisdiction Under CPLR Section 301***

Plaintiff contends that Defendant is subject to the general personal jurisdiction provisions

set forth in New York CPLR § 301.   The standard for establishing general jurisdiction is

"stringent because a defendant who is found to be doing business in New York in a permanent

and continuous manner may be sued in New York on causes of action wholly unrelated to acts

done in New York."  *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 563 (S.D.N.Y. 2006).

"A foreign corporation is amenable to jurisdiction under CPLR section 301 if it is 'doing

business' in New York State.  A foreign corporation is 'doing business' if it engages in 'such a

continuous and systematic course of doing business' sufficient to support a finding of its

presence in this jurisdiction." *Stephan v. Babysport, LLC,* 499 F. Supp. 2d 279, 285 (E.D.N.Y.

2007) (Wexler, J.) (citing *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533 (1967)).

"'Presence' implies substance, continuity, regularity and permanence *at the time the action is brought*." Weinstein, Korn & Miller, *New York Civil Practice*, ¶ 301.16 (2005) (emphasis supplied). A corporation is "present in New York . . . if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985). "[T]he issue of whether a defendant has such a systematic and continuous contact with New York as to be tantamount to presence within the state is a fact-sensitive determination requiring a balancing of all relevant factual circumstances." *Landoil Resources Corp. v. Alexander and Alexander Services, Inc.*, 918 F.2d 1039, 1044 (2d Cir. 1990). "The classic indicia of such permanent and substantial activities in New York 'include: 1) the existence of an office in New York; 2) the solicitation of business in New York; 3) the existence of bank accounts or other property in New York; and 4) the presence of employees in New York.'" *Overseas Media, Inc.*, 407 F. Supp. 2d at 568 (citing *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 268 (S.D.N.Y. 2000)).

Defendant maintains that it is not doing business in New York. Plaintiff does not allege that Defendant had employees in New York, maintained a bank account in New York or solicited business in New York. According to Defendant, "the only fact alleged by [Plaintiff] that could even arguably be a basis for general jurisdiction under CPLR 301" is that Defendant maintains an office in New York. The office referred to by Plaintiff is a 180 square foot office containing a desk, credenza and a table which is used by a single employee when traveling to New York on business. According to Defendant, the space is unoccupied at least 90 % of the time. Russell Decl. ¶¶ 9-10, 12. Defendant argues that the space is used by Todd Russell, Executive Vice President of Leasing, who on occasion travels to New York to meet with current

or prospective tenants of the California retail properties for which he is responsible. *Id*. at 5-7. No solicitation of potential tenants has taken place in the office, Russell asserts, and no retailers, tenants, or other colleagues have visited the space. *Id.* at 9, 12. Defendant entered into the lease in June 2007 and terminated the lease in June 2008.[1]

To satisfy the standard for general jurisdiction set forth by the Second Circuit, a foreign corporation must conduct a substantial degree of solicitation within the state. *See, e.g., Landoil,* 918 F.2d at 1045 (finding that thirteen business trips made by employees of the defendants to New York made sporadically during an eighteen month period were "insufficient to establish the systematic and continuous presence within the state that New York law requires"); *Hoffritz,* 763 F.2d at 57-58 (finding that "extensive" correspondence regarding the parties' business relationship and fifty-four visits to New York to discuss business with the plaintiff was insufficient); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir. 1983) (holding that the defendant's acts sending a "cease and desist" letter to the plaintiff and sending an unspecified number of mail order sales to New York were insufficient to support jurisdiction under CPLR 301); *Patel v. Patel,* 497 F. Supp. 2d 419, 427 (E.D.N.Y. 2007) (correspondence with New York and acts taken in New York sporadic and too few in number to establish systematic conduct); *Avecmedia, Inc. v. Gottschalk,* No. 03 Civ. 7831, 2004 WL 1586411, at *6 n. 2 (S.D.N.Y. July 14, 2004) (presence at a meeting in New York and telephone and e-mail communications to New York were insufficient to satisfy CPLR 301); *Fort Knox Music, Inc. v. Baptiste,* 139 F. Supp. 2d 505, 509-10 (S.D.N.Y. 2001) (not doing business in New York solely by accepting royalty

---

[1]     Defendant's termination of the lease subsequent to the filing of Plaintiff's complaint does not change the Court's analysis. "Later actions cannot defeat personal jurisdiction." *Salvage Universal Corp. v. Grazier Const., Inc.,* No. 05 Civ. 1089, 2004 WL 1824102, at * 9 (S.D.N.Y. Aug. 12, 2004)

payments over several years from the New York plaintiff).   Plaintiff has offered no facts

indicating that Defendant engaged in any systematic solicitation within the state.

The limited contact alleged by Plaintiff is insufficient to subject Defendant to jurisdiction

for all purposes in New York, particularly after the completion of discovery and oral argument

on the issue of personal jurisdiction. Defendant is in the business of providing property

management services and "liquid asset management services" to various entities, all located in

California, and as far as Americana at Brand is concerned, Defendant has provided solely

construction management services for this property located in California.  Defendant's

maintenance of the office space described above without more is insufficient to constitute doing

business in New York.  Thus, Plaintiff has failed to establish that jurisdiction is proper under

CPLR 301.

## 2. *Specific Jurisdiction Under CPLR Section 302(a)(1)*

Plaintiff has asserted as alternative bases for jurisdiction, CPLR § 302(a)(1) and CPLR

§ 302(a)(3).  Defendant contends that jurisdiction under each of these provisions is also

improper.  CPLR § 302(a)(1) provides for jurisdiction over a foreign corporation that transacts

business within the state so long as the cause of action arises out of the transaction conducted in

New York.  "A finding of jurisdiction under Section 302(a)(1) requires a showing that

defendant: (1) 'transacts any business' in New York and, (2) that the cause of action 'arises

from' such transaction."  *Stephan,* 499 F. Supp. 2d at 286 (quoting *Best Van Lines*, 490 F.3d at

246-47).  Defendant argues that Plaintiff fails to identify any business transacted in New York

and instead relies on advertisements placed in national publications as a basis for jurisdiction.  It

is Defendant's position that "the allegations that advertisements for the Americana at Brand have

placed in a national trade publication or on a website are insufficient to establish jurisdiction."

For this proposition, Defendant relies on *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428 (S.D.N.Y. 2003). "It is settled New York law that 'advertisements in national publications are not sufficient to provide personal jurisdiction under Section 302(a)(1).'" *Panacea Solutions, Inc. v. Roll*, No. 05 Civ. 10089, 2006 WL 3096022, at * 3 (S.D.N.Y. Oct. 31, 2006) (citing *Hearst Corp. v. Goldberger,* No. 96 Civ. 3620, 1997 WL 97097, at *11 (S.D.N.Y. Feb. 26, 1997)). Thus, this allegation does not suffice to confer general jurisdiction on this Court. Plaintiff has not responded to this argument and appears to have abandoned its claim that jurisdiction would be proper under this particular provision of the CPLR.

### 3. *Specific Jurisdiction Under CPLR Section 302(a)(3)*

"Section 302(a) (3), like Section 302(a)(1), provides for long arm jurisdiction over a nondomicilliary defendant where the cause of action arises out of certain of defendant's activities, enumerated in the statute. Section 302(a)(3) provides for the exercise of jurisdiction over a defendant who, 'in person or through an agent,' commits a tortious act outside of New York that causes injury within New York. In addition, the defendant's activities must meet one of the two sets of statutory criteria set forth in subsections (i) or (ii) of Section 302(a)(3)." *Stephan*, 499 F. Supp. 2d at 288.

Jurisdiction is proper pursuant to subsection (i) of Section 302(a)(3) if, in addition to the commission of the tortious act outside of New York (which has in-state consequences), the defendant regularly conducts business or engages in other persistent course of conduct in New York, or derives substantial revenue from goods used or services rendered in New York. As discussed above, Plaintiff has not set forth facts demonstrating that Defendant regularly conducts business in New York, engages in other "persistent" conduct in New York, or derives substantial revenue from goods used or services rendered in New York. Thus, this provision is inapplicable.

13

"As to subsection (ii), jurisdiction is proper, if, in addition to commission of the tortious act outside the state of New York with in-state consequences, the defendant: (1) expects or should reasonably expect his acts to have New York consequences and (2) derives "substantial revenue" from interstate or international commerce" *Stephan,* 499 F. Supp. 2d at 288 (citations omitted).

Plaintiff alleges that Defendant "derives substantial revenue from Interstate commerce" because it has entered into agreements with "major New York-based retailers, including A/X Armani Exchange, Barnes & Noble, Crewcuts, H & M, J Crew, Kate Spade, Keihl's, Lacoste, and Tiffany & Co. to become tenants of the Americana at Brand Center." (Sanders Preliminary Injunction Declaration, Exs. 26 and 32). Since this allegation is unrefuted by Defendant, this element of the standard for jurisdiction pursuant to CPLR 302(a)(3)(iii) is easily satisfied.

Next, Plaintiff must establish that Defendant would expect its actions to have New York consequences. According to Plaintiff's allegations, Defendant held itself out as having a presence in New York (even if factually untrue) and solicited New York-based companies to rent space in its mall in California, which bears a similar name to a well known mall in New York. Defendant also leased office space in New York, all while on notice that Plaintiff had taken the position that Defendant's continued use of Americana at Brand constituted a violation of Plaintiff's trademark, resulting in confusion and, potentially, loss of goodwill. Moreover, all of this occurred while Defendant was well aware that Plaintiff's business was also located in New York. Amended Compl. ¶ 3.

The Second Circuit has held that "the 'original event' for purposes of § 302(a)(3) occurs where 'the first effects of the tort that ultimately produced the final economic injury is located.'" *Panacea Solutions, Inc.*, 2006 WL 3096022, at *5 (quoting *DiStefano v. Carozzi North America,*

*Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "In trademark cases, the 'first effects' of trademark infringement or dilution 'are typically felt where the trademark owner resides and conducts business.'" *Id.* (quoting *Savage Universal Corp. v. Grazier Constr., Inc.,* No. 05 Civ. 1089, 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 12, 2004)); *see also McGraw-Hill Companies, Inc. v. Ingenium Technologies Corporation,* 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005); *The Design Tex Group, Inc, v. U.S. Vinyl Manufacturing Corp*., No. 04 Civ. 5002, 2005 WL 357125 (S.D.N.Y. Feb. 14, 2005). In the instant case, the trademark owner resides and conducts business in New York, making New York the locus of the economic injury.

Defendant argues that jurisdiction is improper under this section because Plaintiff has failed to identify any actual injury from the alleged infringement. According to Defendant, Plaintiff must allege that it has actually lost customers or business as a result of the infringement. Plaintiff counters that this is not the law. Plaintiff claims it can prevail if it provides evidence of "damage to goodwill, lost sales or lost customers" or upon a showing that its customers in New York are "confused or deceived." This element is satisfied, according to Plaintiff, by the various declarations which have been submitted. These include the Declaration of Andrea Sanders, Senior Vice-President and Creative Director for Americana Manhasset, submitted in support of Plaintiff's application for a Preliminary Injunction (pending before Judge Wexler) as well as the additional Declarations of Brad Brewster, Kay Peters and Peter Niemitz which were submitted to "reflect experiences by individuals who encountered the AMERICANA AT BRAND mark and were actually confused by Defendant's use of the mark."

The Declaration of Brad Brewster, who lives in San Francisco and is a personal friend of Americana Manhasset's Andrea Sanders, relates his confusion upon viewing an advertisement for "Americana" in a Los Angeles newspaper. Brewster Decl. at ¶ 4. The Declaration of Peter

15

Niemitz, president of his own architecture and interior design firm in Boston, which actually provided services for one of the restaurants in the Americana Manhasset shopping center, describes his confusion upon hearing an advertisement for "the Americana" on WBUR, an affiliate of National Public Radio. Niemitz Decl. at ¶ 5. After hearing the advertisement, Mr. Niemitz questioned a representative of Plaintiff regarding the opening of an Americana in California. Mr. Niemitz was informed there was no affiliation between the two "Americanas." *Id*. at ¶ 7. Kay Peters, President of KTT Communications, is a communications consultant whose firm is located in New York City. Peters Decl. at ¶¶ 1-2. In her Declaration, Ms. Peters recounts reading the *Financial Times*, a British newspaper, in April 2008 and coming upon a story discussing a new shopping center to be located in California called "Americana at Brand." *Id*. at ¶ 5. She immediately thought that the new shopping center was affiliated with Americana Manhasset and that it was probably owned or managed by Americana. *Id*. at ¶ 6. That same day, she forwarded the article to Deirdre Major, Americana's President and asked if the California project was part of Americana's expansion. *Id*. at ¶ 7.

Defendant responds with the Declaration of James O. Ashton, an independent commercial leasing agent in California, who negotiates leasing terms for real estate development in which Rick J. Caruso or a Caruso-related entity is involved. Ashton Decl. at ¶ 1. According to Ashton, LaCoste and other retailers negotiated leases for space at the Americana at Brand through an leasing agent, Stephen Greenberg, who is an independent broker based in Hewlett, New York. *Id*. at ¶ 6. Through the letter of intent process with LaCoste and thereafter, Ashton states that LaCoste, the purportedly confused customer, never expressed any confusion to Ashton regarding the developer of these projects. Indeed, LaCoste negotiated the lease, as Ashton

relates, through a broker who was fully aware of the differences between Americana at Manhasset and Americana at Brand. *Id.* at ¶¶ 10, 14.

For purposes of jurisdiction, Defendant's argument here misses the mark. "The torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held." *McGraw-Hill Companies, Inc. v. Ingenium Technologies Corporation,* 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005); *see also The Design Tex Group, Inc, v. U.S. Vinyl Manufacturing Corp.,* No. 04 Civ. 5002, 2005 WL 357125, at *1 (S.D.N.Y. Feb. 14, 2005) ("because the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place"). "It is reasonably foreseeable that the provision of materials that infringe the copyrights and trademarks of a New York company will have consequences in New York." *Id.* For purposes of this motion, Plaintiff is not required to prove that it was actually injured. Rather, the issue is where the alleged injury occurred, not whether it occurred. Plaintiff's ability, or lack thereof, to demonstrate actual injury goes to the merits of Plaintiff's claims and will no doubt be the subject of further motion practice in this case.

Based on all of the foregoing information, I find that Plaintiff has demonstrated by a preponderance of the evidence that this Court has personal jurisdiction over Defendant under CPLR § 302(a)(3)(iii) and I respectfully recommend to Judge Wexler that the motion to dismiss asserted on these grounds be DENIED..

The Court needs to address here, at least briefly, the principle of due process which Defendant also relies upon. Whenever a state's long-arm statute is applied, the Court is constrained to take into account considerations of due process. Due process "requires that a defendant have enough minimum contacts with the forum state so that the maintenance of the

suit does not offend 'traditional notions of fair play and substantial justice.' ' *PDK Labs., Inc. v. Friedlander,* 103 F.3d 1105, 1110 (2d Cir. 1997) (quoting *International Shoe v. Washington,* 326 U.S. 310, 316 (1945)). Due process is satisfied if the defendants have purposely and sufficiently availed themselves of the privileges of conducting business in New York, so that it would be reasonable to anticipate being subject to suit in New York. *Id.* at 1110-11. "[A]s a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands, Inc. v. Spiritual Brands, Inc.,* 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008).

Defendant opened an office in New York and professed to the business community that its New York office was "a strategic expansion for the company," stating that "the opening of a New York office . . . establishes a pivotal location for the company in the hub of the U.S. fashion industry," allowing Caruso to "expand on [its] existing relationships with top industry innovators in fashion and retail," have "closer contact with premier fashion houses as well as the latest retail pioneers" and "explore real estate opportunities on the East Coast." Defendant's representative has business cards listing Defendant's "New York office." *See* Russell Supp. Decl. at ¶ 2. The office has a phone, a desk, an address and all the indicia of a place of business. Defendant has offered testimony, which is not contested by Plaintiff, that it never actually negotiated or executed any leases in its New York office space. *See* Russell Supp. Decl. at ¶ 4. While this allegation may be enough to find that Defendant has not opened itself up to the general jurisdiction of the Court by continuously and systematically conducting business in the state, it is enough satisfy the due process standard which requires only that Defendant purposefully avail itself of the privileges of conducting business in the state. Accordingly, it my recommendation

to Judge Wexler that Defendant's motion to dismiss on the basis of lack of jurisdiction be DENIED based upon a finding that Plaintiff has satisfied the standard for long arm jurisdiction in New York.

### C.   Motion To Dismiss For Improper Venue or To Transfer Venue

Defendant advances two arguments regarding venue.  First, Defendant moves to dismiss the action pursuant to 28 U.S.C. § 1391 because, according to Defendant, venue is improper. Next, Defendant argues that if the action is not dismissed, it should, at the very least, be transferred to the Central District of California, pursuant to 28 U.S.C. § 1404.

### 1.   *Section 1391 Dismissal*

28 U.S.C. § 1391(b) provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

According to Defendant, this action should be dismissed because Plaintiff has not alleged that Defendant resides in the Eastern District of New York and therefore venue would be improper.  Plaintiff counters that because personal jurisdiction is proper pursuant to CPLR § 302(a)(3)(ii), venue is proper as well.

Defendant's motion to dismiss should be DENIED on these grounds as well.  Section 1391(c) provides that "[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."   It is well settled that "section 1391(c) equates

jurisdiction with venue . . . for corporate defendants." *Laumann Mfg. Corp. v. Castings USA,* 913 F.Supp. 712, 719 (E.D.N.Y. 1996); *The Rockefeller University v. Ligand Pharmaceuticals,* No. 08 Civ. 2755, 2008 WL 2139148, at *5 (S.D.N.Y. May 19, 2008) ("personal jurisdiction over the sole corporate defendant provides a proper basis for venue"); *PDK Labs, Inc. v. Proactice Labs, Inc.*, 325 F. Supp. 2d 176, 181 (E.D.N.Y. 2004) (denying motion to dismiss trademark case on basis of Section 1391 where jurisdiction was found to be proper). Since, as discussed above, this Court has personal jurisdiction over Defendant, venue is proper in this District. Accordingly, I respectfully recommend to Judge Wexler that Defendant's motion to dismiss on the grounds of improper venue should be DENIED.

### 2. *Section 1404 Transfer*

28 U.S.C. § 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been through.

The Court has broad discretion in determining a motion for transfer, but, under § 1404(a), as a threshold matter, it must determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. *Blass v. Capital Int'l Sec. Group,* 2001 WL 301137, at *4 (E.D.N.Y. 2001). In deciding such motions, "[t]he plaintiffs' choice of forum is entitled to substantial weight and will not be disturbed lightly." *Totilo v. Herbert,* 538 F.Supp.2d 638, 640 (S.D.N.Y.2008) (alteration in original; quotation omitted). Indeed, only where "the balance of convenience and justice weigh *heavily* in favor of defendant's [requested] forum" will a court override this choice. *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. LaFarge North Am., Inc.,* 474 F. Supp. 2d 474, 480 (S.D.N.Y. 2007).

In order to obtain a transfer of venue, "the moving party bears the burden of establishing (1) that the action is one that 'might have been brought' in the district to which the movant seeks to have it transferred, and (2) that transfer is appropriate based on the convenience of the parties, the convenience of witnesses, and the interests of justice." *Posven, C.A. v. Liberty Mut. Ins. Co.,* 303 F. Supp. 2d 391, 400-01 (S.D.N.Y. 2004); *see also Reliance Ins. Co. v. Six Star, Inc.,* 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001).   The Court should consider

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus of operative facts, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and the relative ease of access to sources of proof, (6) the relative means of the parties, (7) the forums' familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

*Dealtime.com v. McNulty*, 123 F. Supp. 2d 750, 754-55 (S.D.N.Y. 2000) (citing *Dostana Enter. LLC v. Federal Express Corp.,* No. 00 Civ. 0747, 2000 WL 1170134, at *2 (S.D.N.Y. Aug. 16, 2000)); *see also Red Bull Assocs. v. Best Western Int'l Inc.,* 862 F.2d 963, 967 (2d Cir. 1988). The party seeking transfer has the burden of making a "clear-cut showing" that transfer is warranted in light of these factors.  *O'Hopp v. ContiFinancial Corp.,* 88 F. Supp. 2d 31, 34-35 (E.D.N.Y. 2000).

Plaintiff does not argue that this action could not have been brought in the Central District of California, but for the lack of that court's personal jurisdiction over Plaintiff.  Thus, since this action "might have" been brought in that Court by Plaintiff, I will next consider whether transfer is appropriate based on the convenience of the parties, the convenience of witnesses, and the interests of justice.

"Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.,* 415 F.Supp. 2d 370, 373 (S.D.N.Y. 2006). Moreover, "[t]he convenience of non-party witnesses is accorded more weight than that of party witnesses." *Indian Harbor Ins., Co. v. Factory Mut. Ins. Co.,* 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). When weighing this factor, "a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. Partnership v. Electronic Arts Inc.,* 325 F.Supp.2d 282, 286 (S.D.N.Y.2004).

In an infringement action, the most critical witnesses may be "those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products." *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.,* 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004); *see also International Securities Exchange, LLC v. Chicago Bd. Options Exchange Inc.,* No. 06-13445, 2007 WL 1541087, at *3 (S.D.N.Y. May 24, 2007); *Kwik Goal. Ltd. v. Youth Sports Publishing, Inc.,* No. 06-395, 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006). Indeed, because the dispute involves whether Defendant's trademark infringes on Plaintiff's mark, "resolving such a dispute requires relatively little in the way of witnesses or documents." *PDK Labs, Inc. v. Proactive Labs, Inc.,* 325 F. Supp. 2d 176, 183 (E.D.N.Y. 2004).

Defendant claims that it will be greatly inconvenienced by bringing its witnesses to New York. However, as pointed out by Plaintiff, Fifth Avenue will face a similar inconvenience if forced to litigate in California. Both parties face similar inconvenience in this regard. "The purpose of § 1404(a) is not to shift the inconvenience from one party to the other." *Laumann*

*Mfg Corp. v. Castings USA,* 913 F. Supp. 712, 721 (E.D.N.Y. 1996) *see also Foot locker Retail, Inc. v. SBH, Inc,* No. 03-5050, 2005 WL 91306, at * 9 (S.D.N.Y. Jan. 18, 2005).

Moreover, Plaintiff asserts state law claims for trademark dilution pursuant to New York GBL § 360-1, deceptive acts and business practices, and false advertising under New York GBL §§ 349-50, common law trademark infringement, and unfair competition. This Court is "undoubtedly more familiar with the law governing" the New York state law claims and thus, this factor weighs against transfer. *See, e.g., Foot locker Retail, Inc.*, 2005 WL 91306, at * 10.

Defendant has failed to meet the burden of demonstrating that transfer is clearly warranted and thus my recommendation to Judge Wexler is that Defendant's motion to transfer venue be DENIED.

### D. Motion To Dismiss For Failure To Join An Indispensable Party

Finally, Defendant contends that Caruso PM is an indispensable party which cannot be joined here and, thus, the action must be dismissed. Defendant maintains that Caruso PM is the owner of the Americana at Brand trademark in California and therefore is indispensable under Federal Rule of Civil Procedure 19(b). Plaintiff, on the other hand, argues that Caruso PM does not have any trademark rights to Americana™ or Americana at Brand because it abandoned its attempted federal registration. Likewise, Plaintiff avers that Caruso PM has no common law rights to the mark because it is a shell corporation with no employees and no business. According to Plaintiff, Caruso PM has no real interest in the Americana at Brand mark.

"Rule 19 sets forth a two-step test for determining whether the Court must dismiss an action for failure to join an indispensable party. First, the Court must determine whether an absent party is necessary." *Bodner v. Banque Paribas,*, 114 F. Supp. 2d 117, 137 (E.D.N.Y. 2000). Under the Federal Rules of Civil Procedure, a person is a necessary party in a pending

23

action when: (a) complete relief cannot be afforded to those who are already parties; or (b) the person claims an interest in the action, and disposing of the action in the person's absence may: (i) impair or impede his ability to protect or (ii) leave a person who is already a party subject to substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of a claimed interest.

"The burden of demonstrating that a party is necessary falls to defendants in this case." *Bodner,* 114 F. Supp. 2d at 137. Defendant has failed to meet that burden. "All persons and corporations who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985); *Lingo Corp. v. Topix, Inc.*, No. 01 Civ. 2863, 2003 WL 223454 (S.D.N.Y. Jan. 31, 2003); *Make Up ForEver, SA v. SOHO Forever, LLC,* 198 F.R.D. 56, 60 (S.D.N.Y. 2000) ("in a trademark case any member of the distribution chain can be sued as an alleged tortfeasor").

Infringers who may be found jointly and severally liable are not necessary parties. "The Rule makers did not intend to make a necessary party of an ordinary tortfeasor who is potentially liable under the doctrine of joint and several liability." *Bodner*, 114 F. Supp. 2d at 138. Since, as discussed above, Caruso PM is, at best, jointly and severally liable with Defendant, Caruso PM is not a necessary party to this action. Therefore, I need not reach the second step in analyzing Defendant's motion to dismiss under Rule 19. Accordingly, I respectfully recommend to Judge Wexler that Defendant's motion to dismiss the complaint for failure to join an indispensable party be DENIED, because Caruso PM is not a necessary party.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion to strike the five declarations submitted by Plaintiff subsequent to oral argument on the motion to dismiss is DENIED. Further, I respectfully recommend to Judge Wexler that (1) Defendant's motion to dismiss on the basis of a lack of personal jurisdiction be DENIED; (2) Defendant's motion to dismiss on the basis of improper venue and to transfer venue be DENIED; and (3) Defendant's motion to dismiss for failure to join an indispensable party be DENIED.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6(a) and (e).   Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Leonard D. Wexler , and to the chambers of the undersigned .  Any requests for an extension of time for filing objections must be directed to Judge Wexler prior to the expiration of the (10) day period for filing objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


**SO ORDERED.**


Dated: Central Islip, New York
         December 16, 2008

                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON

25

U.S. Magistrate Judge