UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

FIFTH AVENUE OF LONG ISLAND
REALTY ASSOCIATES D/B/A/
AMERICANA MANHASSET,

                                                    FINDINGS OF FACT AND
                                                    CONCLUSIONS OF LAW

              Plaintiff,

                                                    CV 08-384

        -against-                                (Wexler, J.)

CARUSO MANAGEMENT
COMPANY, LTD. D/B/A/ CARUSO
AFFILIATES,

              Defendant.
-------------------------------------------------------------X

APPEARANCES:

        BRACEWILL & GIULIANI
        BY: JOHN C. RAWLS, ESQ.
           VALYNCIA SIMMONS, ESQ.
        Attorneys for Plaintiff
        711 Louisiana Street Suite 2300
        Houston, Texas 77002-2770

        QUINN EMANUEL URQUHART & SULLIVAN, LLP
        BY: JEFFREY A. CONCIATORI, ESQ.
           DEBRA BROWN, ESQ.,
           MICHAEL CARLINSKY, ESQ.
        Attorneys for Defendant
        51 Madison Avenue    22nd Floor
        New York, New York 10010

WEXLER, District Judge

       This action was commenced by Plaintiff Fifth Avenue of Long Island Realty Associates

d/b/a/ Americana Manhasset ("Plaintiff" or "Fifth Avenue") alleging: (1) trademark infringement

pursuant to 15 U.S.C. §1114(1); (2) unfair competition under the Lanham Act, 15 U.S.C.

§1125(a); (3) violation of the Anticybersquatting and Consumer Protection Act, 15 U.S.C. §

1125(d); (4) trademark dilution in violation of Section 360-l of the New York State General Business Law; (5) violation of New York State General Business Law §§349 and 350; (6) common law trademark infringement and, (7) unjust enrichment. Named as Defendant is Caruso Management Company, Ltd. d/b/a/ Caruso Affiliated d/b/a/ Caruso Affiliates ("Defendant" or "Caruso").

Plaintiff operates a shopping center located in Manhasset, New York known as the "Americana at Manhasset." Defendant operates a large mixed use residential and shopping area in Glendale, California, known the "Americana at Brand." At the core of all of Plaintiff's claims is Defendant's use of its name, which incorporates the word "Americana." In addition to denying Plaintiff's claims, Defendant asserts counterclaims seeking cancellation of Plaintiff's "Americana" registered mark based upon allegations of abandonment, and fraud on the United States Patent and Trademark Office. Defendant also seeks an order directing the Patent and Trademark Office to refuse to register Plaintiff's pending trademark application, which seeks to broaden the ways in which Plaintiff may use the Americana name.

A non-jury trial of all claims was held before this court. The parties have submitted proposed findings of fact, conclusions of law, and legal memoranda. The court has considered those submissions and this constitutes the Court's Findings of Fact and Conclusions of Law. In summary, and for the reasons set forth below, the court holds in favor of Defendant on each of Plaintiff's claims, but denies Defendant's request for prevailing party fees.

<u>FINDINGS OF FACT</u>

I.   <u>The Parties</u>

    1.   Plaintiff is a limited liability company organized pursuant to the laws of the State of New York, with its principle place of business in Manhasset, New York.

2.      Plaintiff is the landlord, and operates a shopping center located on Northern Boulevard in Manhasset, New York.

3.      Frank Castagna, while not a party hereto, is a principle in the Plaintiff company. Castagna is also a principle in a company known as Castagna Realty, which provides management services to the Plaintiff company.

4.      Defendant is a limited partnership headquartered in Los Angeles, California.

5.      Defendant operates a mixed use residential and shopping center, located near Brand Boulevard in Glendale California, known as the "Americana at Brand."

6.      Rick Caruso, while not a party hereto, is the President and Chief Executive Officer of the Defendant company.

II.     The Parties' Businesses

A.      The Americana at Manhasset

7.      Plaintiff has operated its business at the same location in Manhasset, New York since 1956.

8.      The Americana at Manhasset shopping center houses approximately 60 retail stores, and two restaurants.

9.      The stores at the Americana at Manhasset shopping center are overwhelmingly luxury stores, catering to the more affluent consumer.  Such stores  include Tiffany, Gucci, Prada, Louis Vuitton, Chanel, Hermes, Cartier, and Bottega Veneta.

10.     While other stores at the Americana Manhasset are not considered to be "luxury" stores, Plaintiffs themselves characterize these stores as "high end."  Such stores include Brooks Brothers, Cole Haan, Coach, and Juicy Couture.

11.  The smallest category of stores at the Americana Manhasset are those that cater to a slightly lower price point consumer, such as The Gap and Banana Republic.

12.  Consumers targeted by Plaintiff's management are those with home values in excess of $2 million, and households with annual incomes in excess of $250,000.

13.  The Americana at Manhasset is not a destination for tourists from around the world. Instead, the vast majority of consumers shopping at the Americana at Manhasset are from the immediate Long Island community or the New York City area.

14.  Plaintiff's marketing efforts are directed primarily to local consumers.

15.  Plaintiff publishes a catalogue three times a year which is distributed locally and to select consumers in affluent parts of Florida.

16.  Plaintiff advertises in nationally distributed magazines, but those advertisements are aimed primarily at local New York and select Florida market subscribers to those magazines.

17.  The Americana at Manhasset does not have any residential units, a movie theater or public parks. Nor does the Americana at Manhasset host any large scale events open to the public, such as holiday celebrations.

18.  Plaintiff has never expanded its business beyond the Manhasset location. Instead, it has maintained that business in the same location, with the same overall square footage.

19.  There is no evidence that Plaintiff has ever taken any steps to expand its business to the State of California.

B.     Defendant's Business

20.     The Americana at Brand is located in Glendale, California.

21.     The Americana at Brand is a 2.2 million square foot development that is aptly referred to by Defendant as a "town center development" or a "lifestyle center."

22.     In addition to 64 retail shops and 18 restaurants and cafes, the Americana at Brand contains, within the development, over 330 residential units, a movie theater, and a public park.

23.     The Americana at Brand encompasses approximately fifteen acres of land, with a two acre park, open to the public, at its center.

24.     Also present at The Americana at Brand are approximately twenty street vendor carts selling consumer items and refreshments.

25.     The Americana at Brand development also includes two swimming pools, a spa, and a gym.

26.     The two acre public park at the center of the Americana at Brand includes a public playground, and a water feature that operates as a choreographed dancing water display.

27.     The Americana at Brand hosts a variety of family-themed outdoor events throughout the year, including puppet shows, arts and crafts sales, a farmers' market, and a large scale Christmas Tree lighting ceremony and celebration.

28.     There was strong evidence, and the court concludes, that local individuals visit the Americana at Brand to partake in various outdoor activities that may or may not include shopping.

III.    <u>Factual Findings Comparing the Parties' Shopping Centers</u>

29.    The distance between the Americana Manhasset, and the Americana at Brand is approximately 3,000 miles.

30.    While there were some overlapping stores at the parties' centers, the court finds the differences between the centers to be overwhelming.

31.    Aside from the parties' use of the common word "Americana," in the names of their centers, the great differences between the parties' centers greatly outweigh any minor similarities.

32.    The facts that both Americana Manhasset, and Americana at Brand are located in "open air" settings, <u>i.e.</u>, not within enclosed mall settings, and have a limited number of common tenants, are of no significance to the issue of similarity, given the extraordinary differences between the centers.

33.    Measured by square footage alone, the Americana at Manhasset is vastly different, as it is much smaller than the Americana at Brand.

34.    While the Americana at Manhasset is a small strip development housing primarily luxury stores, the Americana at Brand is a large scale, family-centered community center.

35.    The Americana Manhasset is marketed as a luxury shopping destination.

36.    The Americana at Brand is marketed as a residential, family entertainment, and shopping destination.

37.    The Americana Manhasset is not a residential community, and cannot be characterized as a family entertainment destination.

38.    The physical layout of the parties' centers is very different. While the Americana Manhasset is located in a strip-style setting on one street in Manhasset, New

York, the Americana at Brand is a self-contained community covering an area of approximately four city blocks.

39. There is no evidence of any overlap in consumers between the parties' centers. Americana at Manhasset markets to and attracts primarily consumers who are local to the New York area, while the Americana at Brand markets to and attracts consumers from its neighboring California communities.

40. The fact that national print or website advertising may expose consumers nationwide to advertisements for stores found at both Americana Manhasset and the Americana at Brand is of no importance. Evidence that a California tourist might find himself shopping at Americana Manhasset while vacationing in New York, or that a New York tourist might find himself shopping, or attending an event at the Americana at Brand, is equally of no relevance.

41. A California consumer exposed to a national print or website advertisement for a shopping center is not in the same market targeted by a shopping center advertisements viewed by New York consumers.

42. There is no overlap in the parties' target audience or consumers.

43. The parties are not in direct competition for buyers from the same market.

44. There is no evidence that either party intends to enter the market of the other.

45. In sum, the court finds, as a matter of fact, that other than: (1) usage of the common term "Americana," (2) the presence of some overlapping stores, and (3) the fact that both centers are not enclosed malls, there are no similarities between the parties' centers. Instead, they are different on several important levels, including square footage, presence of residential units, different stores and other entertainment options, layout, community use, and consumer base.

IV.     Factual Findings Regarding Confusion

46.     Plaintiff's attempts to introduce evidence of actual confusion stemming from the parties' use of the names Americana or Americana Manhasset and/or Americana at Brand were isolated, weak and unconvincing.

47.     The sole evidence of actual consumer confusion was offered with respect to the testimony of Miranda Bressman, a single consumer who purchased an online gift card. While this consumer thought she was purchasing a gift card for use at the Americana at Brand she had mistakenly navigated to the Americana Manhasset website, and purchased a gift card for use at that shopping center.

48.     Ms. Bressman's single online mistake is wholly insignificant when considered in comparison to the thousands of gift cards properly purchased for use at the Americana at Brand. Over 5,000 of those gift cards have been sold, and there was no evidence that anyone purchasing such a gift card thought they were purchasing a card for use at the Americana Manhasset.

49.     There is no evidence that Ms. Bressman's mistake was repeated by other consumers. This is probably because more than 90% of gift cards purchased for use at Americana Manhasset are purchased in person, and not online.

50.     Plaintiff's other evidence of alleged actual confusion was equally unconvincing, and is not found to be credible evidence of confusion by this court. That evidence came only from individuals affiliated in one way or another with Americana Manhasset's business or personnel.

51.     Those individuals were: Brad Brewster, Peter Niemitz, Kay Peters and Tamara Rosenthal. Brewster is a personal friend of Andrea Sanders, Plaintiff's head of marketing. Niemitz has worked with Plaintiff's principle officer. Peters is the

president of a consulting firm employed by Plaintiff, and Rosenthal has had an ongoing personal and business relationship with Andrea Sanders for several years.

52. None of the foregoing witnesses were consumers who made a single purchasing decision that was somehow confused by the similarity of the names Americana at Brand and Americana or Americana Manhasset.

53. The testimony with respect to each of these witnesses was at most, a fleeting mistaken belief as to a connection between the Americana at Brand and Americana Manhasset, with which they had some type of prior business relationship.

54. With the exception of the mistaken website consumer, none of Plaintiff's "actual confusion" witnesses were neutral consumers interested in shopping at either the Americana at Brand or Americana Manhasset.

V. Plaintiff's Trademark Registration And Its Use Of The "Americana" Name

    A. Registration of the "Americana" Mark Standing Alone: No.1,771,826

55. Plaintiff is the owner of Registration No. 1,771,826 for use of the term "Americana," covering shopping center services. This mark was filed with the Patent and Trademark Office ("PTO") on May 29, 1992, and declared a first use of December 1, 1976. This mark was registered by the PTO as of May 18, 1993.

56. The specimen of use of the mark sought to be registered in the application for Registration No. 1,771,826 was a 1987 advertisement that used the term "Americana," standing alone.

57. In 1998, Plaintiff submitted to the PTO a combined declaration of use and incontestability with respect to Registration No. 1,771,826. That declaration

asserts that the mark "Americana," had been in continuous use for five years prior to the date of the declaration, and includes specimens of such use. Those specimens are advertisements using the term "Americana at Manhasset," and depict the word "at" between the words "Americana" and "Manhasset." The term"Manhasset" appears in a substantially smaller font than the word "Americana."

58.     The use depicted in the 1998 application differs from Plaintiff's current use of the terms "Americana" and "Manhasset," which uses them together, without the connecting term "at." The current use of these terms uses each word in the same style, and in equal size font.

59.     On February 6, 2003, Plaintiff applied for renewal of Registration No. 1,771,826. In connection with this renewal application, Plaintiff declared that it was continuing to use the mark "Americana," in commerce.

60.     Plaintiff submitted a specimen of use of the Americana mark along with its renewal application. That specimen was an advertisement for Hirshleifer's, a store located at Plaintiff's shopping center. The submitted advertisement did not use the term "Americana," standing alone. Instead, that advertisement used the term "Americana Manhasset." The two words in the submitted advertisement are of equal size and of the same font. The word "at" does not appear in between the two words "Americana," and "Manhasset."

61.     On February 6, 2003, the PTO renewed Plaintiff's Registration No. 1,771,826 for use of the term "Americana," standing alone.

B.      <u>Application to Extend Use of Americana Registration No. 77163945</u>

62.     On April 24, 2007, Plaintiff again applied to register the "Americana" mark, with the PTO. The 2007 application, filed under Registration No. 77163945, seeks to extend the uses of the mark to include registration pursuant to additional classes of use.

63.     When compared with the original registration of the Americana mark, registered only in connection with "shopping center services," the 2007 application seeks registration in connection with a much broader variety of services including, inter alia, business, advertising, marketing, and consultative services, and providing information about entertainment and recreational activities including community and holiday events and entertainment and recreational services, gatherings and festivals and musical events.

64.     Specimens of first use submitted in connection with the 2007 application included use in a letterhead used in 1969, and advertisements from 1988 and 1997. Each specimen used the term "Americana" standing alone, and not the Americana Manhasset mark which was actually being used by the Plaintiff at the time of the 2007 application.

65.     In a filing received by the PTO in January 2009, and in response to comments of the PTO indicating a possibility of confusion with other existing marks, Plaintiff withdrew its 2007 application, and amended its application to comport with PTO suggestions.

66.     The 2007 registration application for the Americana mark remains pending before the PTO.

C.      Registration of the "Americana Manhasset " Mark No. 2,648,932

67.     Plaintiff is the owner of Registration No. 2,648,932 for use of the term

"Americana Manhasset," for shopping center and retail services.  That registration

was filed on August 17, 2001, and was registered with the PTO as of November

12, 2002.  Plaintiff was required to disclaim the use of the descriptive term

"Manhasset" apart from the Americana Manhasset mark.

68.     The specimens of use of the mark sought to be registered in the application for

Registration No. 2,648,932, were advertisements using the term "Americana

Manhasset " in a single line, with the same style and size font used for both words

in the mark, and with the word "Manhasset" directly under the term "Americana."

69.     Plaintiff indicated that the first use of the mark "Americana Manhasset" was in

1997 for Class 35 use and in 2000 for Class 36 use.  Plaintiff indicated in its

application to register the Americana Manhasset mark that it had used the mark

"Americana," in some form since at least 1963.

70.     On June 3, 2008, Plaintiff submitted to the PTO a combined declaration of use

and incontestability with respect to its use of the Americana Manhasset mark,

Registration No. 2,648,932.  The specimen of use submitted in connection with

this application shows the use of the term "Americana Manhasset," in a single

line, with the same style and size font for both of the words contained in the mark.

D.      Plaintiff's Other Registrations

71.     Plaintiff is the owner of Registration No. 3,555,906 for use of the term

"Americanamanhasset.com"

72.     Plaintiff is the owner of Registration No. 3,573,300 for "Americana Gift Card."

73.     Plaintiff is the owner of Registration No. 3,604,842 for "Americana at

Manhasset."

74. Plaintiff is the owner of Registration No. 3,678,230 for "Americana Manhasset" covering a variety of shopping and consultation services.

E. Plaintiff's Actual Use of the Terms "Americana" and "Americana Manhasset"

75. From 1956 until approximately 1963, Plaintiff operated its shopping center under the name "Fifth Avenue of Long Island."

76. Beginning sometime in 1963, Plaintiff began to use the term "Americana," in its name. First, the name " The Americana Shopping Center," was used, followed by other names, all of which included the term "Americana," in one form or another. From approximately the year 2000 to date, Plaintiff has operated its center exclusively under the name "Americana Manhasset."

77. Currently, the name "Americana Manhasset" is used on signage and marketing materials used in connection with the Plaintiff's shopping center. These materials are formatted so that the words "Americana" and "Manhasset" appear in the same style and size font.

78. Although Plaintiff is a landlord, and does not operate any retail establishments located at the Americana Manhasset, it maintains strict control over the use of the Americana Manhasset name by its tenant stores. Such control is maintained by lease provisions that speak to the usage of this name.

79. Since as early as 2000, Plaintiff has made clear to its tenant stores, by way of lease provisions, that the term Americana is not to be used alone to identify its shopping center. Instead, Plaintiff insists that term "Manhasset," always accompany tenant stores' references to its shopping center.

80.     Plaintiff does not currently, and has not, since as early as 2003, used the term Americana, standing alone to identify its shopping center, or any services offered either by Plaintiff, or any of its tenant stores.

81.     There is no evidence that Plaintiff plans to resume use of the term Americana, standing alone, to identify its shopping center, or any services offered either by Plaintiff or any of its tenant stores.

VI.     <u>Defendant's Choice and Use of the Name Americana at Brand</u>

82.     Defendant introduced testimony indicating that it chose the name the "Americana at Brand," based upon the results of a naming contest open to the Glendale community. The court credits such testimony as entirely credible.

83.     The court finds credible testimony that the name "Americana" was submitted by a community contest participant. The court also finds credible the explanation for adoption of the full name "Americana at Brand." As Defendant credibly explained, the suggested Americana name was modified to add "at Brand," a regional identifier, which is in conformance with Caruso's usual real estate development business plan. That plan typically refers to the name of a project, followed by the word "at," and a regional identifier. Projects following this practice include "The Commons at Calabasas," "The Promenade at West Lake," and "The Lakes at Thousands Oaks."

84.     The court also finds credible Defendant's explanation for rejection of the name "Americana," standing alone, because such a name was thought to be too generic to allow a consumer to easily identify the project located at Brand Boulevard in Glendale, California.

85.     The court finds that in choosing the name "Americana at Brand," there was never any intent to associate the Glendale California development with the Americana Manhasset.

86.     The court finds completely incredible Plaintiff's argument that Defendant "stole" the Americana name, and acted in bad faith after witnessing its successful use at the Americana Manhasset.  The court finds that representatives of Defendant did, in fact, visit the Americana Manhasset during a marketing team visit to the New York City area, and related meetings with a New York real estate broker. However, the court also finds that those who visited were not involved in the naming of the Americana at Brand.

87.     The court finds no credible connection between the New York marketing trip, and the naming of the Americana at Brand in Glendale, California.

88.     The adoption of the name "Americana at Brand," was in no way related to the knowledge of the Defendant, or any of its representatives, of the Americana Manhasset shopping center.

89.     When adopting the Americana at Brand name, Defendant possessed reasonable grounds to believe that it had a right to use the name on the ground that it was generic.

90.     Defendant reasonably believed that no one could possibly be confused by its use of the Americana at Brand name in California, or believe that the Defendant's center was in any way affiliated with Plaintiff's shopping center, located 3,000 miles away, or indeed, any other shopping center located elsewhere in the United States that might use the term "American" or "Americana," as part of its name.

91.     There was no bad faith in adoption of Defendant's name.

VII.  <u>Defendant's Trademark Registration</u>

92.  Defendant owns a California state registered trademark for the "Americana at Brand" name.

93.  Defendant does not own a Federally Registered Trademark for the name "Americana at Brand."

VIII.  <u>The Parties' Websites and Domain Names</u>

94.  Neither party owns the domain name "americana.com."

95.  Plaintiff owns the domain names "americanamanhasset.com.," "americanamanhasset.net.," and "americanamall.com."

96.  Plaintiff's websites consist of a directory of stores located at the Americana Manhasset.  Individuals visiting the websites cannot make tenant store purchases.

97.  The only thing available for direct purchase at Plaintiff's websites are Americana Manhasset gift cards.  Such cards are depicted on the website as bearing the name "Americana Manhasset," with the two words appearing in the same style and size font.  The word "Manhasset," appears directly under the word "Americana."

98.  Defendant owns the domain names "americanaatbrand.com," "americanaatbrand.net," and "americanaatbrand.org."

99.  Defendant registered its domain names in good faith, and without any intent to do harm to Plaintiff's good will, or to profit from Plaintiff's name, or to divert customers away from Plaintiff's websites, and to Defendant's websites.

IX.  <u>Other Uses of the Term "Americana"</u>

100.  The court credits Defendant's evidence that, in addition to the Americana at Brand, and Americana Manhasset, there are other shopping centers, located throughout the country that incorporate the term "America" or "Americana" in

their names. These centers include the Mall of America, the Americana Plaza, the Americana Center, and the Americana Antique Mall.

101. Defendant submitted, and the court credits the definition of the term "americana," found in Merriam Webster's online dictionary. That source defines the term "americana" to mean "(1) materials concerning or characteristic of America, its civilization, or its culture, (2) American culture."

102. There was testimony indicating that a search in the Google search engine for the term "Americana," yielded approximately 60,000,000 results. While these results include the use of the term within articles, and not just the names of businesses using the term "Americana," in their names, the number of results is good evidence of the ubiquity of the term.

103. The court can scarcely imagine a more general term, or one that could more easily be applied to any area of the marketing of any good or service marketed in the country.

## CONCLUSIONS OF LAW

I. Jurisdiction and Venue

104. This court has jurisdiction over the claims raised herein under 28 U.S.C. §§ 1331 and 1332. Venue is proper pursuant to 28 U.S.C. §1391(a)(c).

II. Trademark Infringement/Unfair Competition and Abandonment

105. Plaintiff asserts infringement of its registered trademarks "Americana," and "Americana Manhasset," pursuant to 15 U.S.C. § 1114. That section gives the owner of a trademark the right to bring a civil action against a defendant alleged to have used the mark without the owner's consent. 15 U.S.C. § 1114(a).

106.    To prevail on a claim for trademark infringement, a plaintiff must show: (1) that it possesses a valid mark entitled to protection, and (2) that defendant's use is likely to cause confusion as to the source or sponsorship of the product. Star Indus., Inc. v. Bacardi & Co., Ltd., 412 F.3d 373, 381 (2d Cir. 2005); Brennan's, Inc. v. Brennan's Rest., LLC., 360 F.3d 125, 129-30 (2d Cir. 2004).

107.    Plaintiff also asserts a federal claim for unfair competition under the Lanham Act. While such a claim does not require that plaintiff possess a federally registered valid trademark, it does require proof that plaintiff's mark is distinctive as to the source of its goods.  Star Indus., 412 F.3d at 381. Similar to an action for infringement, a Lanham Act unfair competition claim requires a plaintiff to prove that defendant's use of the name at issue results in a likelihood of confusion as to "origin, sponsorship or approval . . . ."  ITC Limited v. Punchgini, Inc., 482 F.3d 135,153-54 (2d Cir. 2007); Dudley v. Healthsource Chiropractic, Inc., 585 F. Supp.2d 433, 443-44 (W.D.N.Y. 2008).

A.    Validity of the "Americana" and "Americana Manhasset" Registered Marks

108.    This court has the authority, pursuant to 15 U.S.C. § 1119, to determine the validity of a mark, its right to registration, and to order the cancellation of a trademark registration.  15 U.S.C. § 1119.

109.    When determining the validity of the Plaintiff's marks, the court considers, inter alia, whether the mark is incontestable.  Under certain circumstances, the right to use a registered trademark that has been in use for five years, is incontestable.  15 U.S.C. §1065.

110.    Plaintiff's trademark in the Americana name has become incontestable.

111. Plaintiff's trademark in the Americana Manhasset name has become incontestable.

112. Incontestability is subject to two important limitations, both of which are alleged here: (1) abandonment and, (2) fraud in obtaining either the initial registration, or incontestability.  <u>See</u> 15 U.S.C.  §§1065, 1064(3).

113. Allegations of abandonment and fraud are offered by way of defense to the infringement claim, and in support of Defendant's argument that the "Americana" mark should be cancelled.  These allegations do not refer to Plaintiff's "Americana Manhasset" name.

B.     <u>Abandonment</u>

114. The doctrine of abandonment is derived from the principle that the right to a trademark is acquired and maintained through use of that mark.  <u>ITC</u>, 482 F.3d at 146; <u>Pan American World Airways, Inc. v. Flight 001, Inc.</u>, 2007 WL 2040588 *10 (S.D.N.Y. 2007).

115.  A party asserting abandonment of a mark bears the burden of making the factual showings of: (1) "non-use of the mark by the legal owner, and (2) lack of intent by that owner to resume use of the mark in the reasonably foreseeable future." <u>ITC</u>, 482 F.3d at 147; <u>see</u> 15 U.S.C. §1127 (defining abandonment as discontinuance, with no intent to resume use).

116. Non-use of a mark for a period of three years is <u>prima</u> <u>facie</u> evidence of abandonment.  15 U.S.C.  § 1127.  Such evidence creates a rebuttable presumption of abandonment.  <u>ITC</u>, 482, F.3 at 147, quoting, <u>Saratoga Vichy Spring Co. v. Lehman</u>, 625 F.3d 1037, 1044 (2d Cir. 1980).  This presumption has the effect of shifting the burden of production to the owner of the mark to come

forward with evidence showing the intention to "resume the use of the mark within a reasonably foreseeable time." ITC, 482 F.3d at 148. While the burden of production shifts, the ultimate burden of proof as to abandonment rests with the party claiming abandonment. Citigroup Inc. v. City Holding Co., 2003 WL 282202 *17 (S.D.N.Y. 2003). That burden requires clear and convincing evidence of intent to abandon. Saratoga Vichy Spring Co. v. Lehman, 625 f.2d 1037, 1044 (2d Cir. 1980).

117. The level of proof required to show an intent to resume use is not high. It is required only that the mark holder come forward with evidence to support a fact finder's inference of intent to resume use. ITC, 482 F.3d at 149.

118. Evidence proffered to show an intent to resume use of a mark must show the intent to resume use within the three year period of non-use. ITC, 482 F.3d at 149. The Second Circuit, however, has not foreclosed the use of evidence arising after the three year period, so long as that evidence shows an intent to resume use within the three year period. ITC, 482 F.3d at 149, 149 n.9.

119. The court's findings of fact make very clear that as early as 2000, Plaintiff ceased using the term Americana, standing alone, to identify its shopping center. Instead, after a period of usage of the term "Americana at Manhasset," (which was never a registered mark), Plaintiff consistently used only the name "Americana Manhasset," to identify its shopping center, and not the term "Americana," standing alone.

120. Additionally, Plaintiff made it very clear to its tenants that they were never to use the Americana name, standing alone, to identify the shopping center. Instead,

tenants were bound by lease provisions to use only the "Americana Manhasset" name to identify their location.

121.    The facts established at trial also establish, beyond question, that all marketing materials and signage have consistently, and certainly for a period exceeding three years prior to this lawsuit, used the name "Americana Manhasset," with both words afforded equal prominence.  The foregoing evidence convinces this court, by clear and convincing evidence, that Plaintiff ceased use of the term "Americana," standing alone, since as early as 2000.  Accord MB Fin. Bank, N.A. v. MB Real Estate Servs., LLC, 2003 WL 22765022 *3 (N.D. Ill. 2003) (use of new signage and memos instructing employees to use only new logo employing lower case letters held to support intent to abandon earlier logo that used upper case letters).

122.    If the only factual issue germane to a holding as to the abandonment issue was whether or not Plaintiff continues to use the term "Americana," standing alone, to identify its business, this court would have no difficulty concluding that this name has been abandoned.

123.    Plaintiff argues, however, and the law recognizes, that a trademark holder can make modifications to a registered mark without being deemed to have abandoned the mark in its original form.  In such cases, the modified mark is deemed to be "tacked on," to the registration of the originally registered mark. See Van Dyne-Crotty, Inc. v. Wear-Guard Corp., 926 F.2d 1156, 1159 (Fed. Cir. 1991); Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 955 (7th Cir. 1992); AB Electrolux v. Bermil Industries Corp.,481 F. Supp.2d 325, 331 n.19,

332 (S.D.N.Y. 2007); <u>see generally</u> J. Thomas McCarthy, <u>McCarthy on Trademarks & Unfair Competition</u>, 4th ed. (hereinafter "McCarthy") §17:26.

124. Tacking on is allowed, and a claim of abandonment defeated, where the newly modified mark is deemed to create the "same, continuing commercial impression" as the registered mark. <u>Phillips-Van Heusen</u>, 444 F. Supp.2d 250, 255 (S.D.N.Y. 2006), quoting, <u>Ilco Corp. v. Ideal Sec. Hardware Corp.</u>, 527 F.2d 1221, 1224 (C.C.P.A.1976); <u>accord</u> <u>Data Concepts, Inc. v. Digital Consulting, Inc.</u> 150 F.3d 620, 623 (6th Cir. 1998); <u>Sands, Taylor</u>, 978 F.2d at 955; <u>AB Electrolux</u>,481 F. Supp.2d at 331 n.19, 332 (S.D.N.Y. 2007).

125. Although it has been recognized that "minor changes in a mark which do not change the basic, overall commercial impression created on buyers will not constitute any abandonment," <u>Sands, Taylor</u>, 978 F.2d at 955, quoting, 1 J. Thomas McCarthy, <u>Trademarks and Unfair Competition</u> (2d ed. 1984) §17:10, at 787, it has also been noted that cases applying the "continuing commercial impression" rule sometime result in "apparently inconsistent decisions." <u>McCarthy</u>, §17:26.

126. Courts have considered whether the deletion or addition of words to a registered mark can support a claim of continuing use. Where those words do nothing to change the commercial impression of the registered mark, there is no abandonment of the registered mark. <u>See</u> <u>Puritan Sportswear Corp. v. Shure</u>, 307 F. Supp. 377, 389 (W.D. Pa. 1977) (use of "Puritan" standing alone is not abandonment of registered mark "Puritan Sportswear the Choice of All Americans"); <u>American Security Bank v. American Security and Trust Co.</u>, 571 F.2d 564, 567 (CCPA 1978) (registered mark of "American Security" held to

create same continuing commercial impression as "American Security Bank" because addition of the word "Bank" was merely descriptive of the same commercial use of the mark); Proxite Prods. Corp. v. Bonnie Brite Prods. Corp., 206 F. Supp. 511, 513-14 (S.D.N.Y. 1962) (dropping of the word "Prox" from registered mark for "Prox Bonnie Blue" did not prevent priority of use of term "Bonnie Blue" standing alone).

127.  On the other hand, there have been cases where minor word changes have been held to convey a different commercial impression, resulting in the rejection of a tacking argument.  See, e.g. Van Dyne-Crotty, Inc. v. Wear-Guard Corp., 926 F.2d 1156, 1159 (Fed. Cir. 1991) (holding mark "Clothes That Work," does not create the same continuing commercial impression as "Clothes That Work. For the Work You Do."); Phillips-Van Heusen Corp. v. Calvin Clothing Co., Inc., 444 F. Supp.2d 250, 255-56 (S.D.N.Y. 2006) (use of mark "CFM Calvin for Men" does not prevent abandonment of mark for "Calvin," standing alone); American Mobilphone, Inc. v. American Paging, Inc., 923 F.2d 869 (Fed. Cir. 1990) (holding that "American Mobilphone Paging" did not create the same continuing commercial impression as "American Mobilphone" because terms conveyed different commercial services); ILCO Corp. v. Ideal Security Hardware Corp., 527 F.2d 1221, 1224 (CCPA 1976) (change of mark from  "Home Protection Hardware" to "Home Protection Center" held to create different commercial impression).

128.  Also important to the "continuing commercial impression" issue is whether the modified mark is visually and aurally the same as the initially used mark.  Where the marks do not give the same visual impression, a claim of tacking has not been

allowed.  See Data Concepts,, 150 F.3d at 623-24 (lower case stylized use of "dci" held not to create same commercial impression as "DCI.COM"); MB Financial, 2003 WL 22765022 *4 (logo using upper case letters "MB" held not to create same commercial impression as logo using lower case letters "mb").  Even where the visual impression of two marks is virtually identical, a claim of a continuing commercial may be defeated.  See American Mobilphone, 923 F.2d 869; 1990 WL 177458 *3 ("American Mobilphone Paging" did not create continuing commercial impression as "American Mobilphone" even though both marks used identical stylized font and size).

129.    Upon analysis of the cases, the court notes that there is a difference between the deletion of words from a registered mark, and adding to, or changing words of that mark. While it may be easier to find a continuing commercial impression where words are deleted, courts are less likely to conclude that two marks convey the same impression when words are changed or added.  Compare Puritan Sportswear, 307 F. Supp. at 389 (deletion of words "Sportswear the Choice of All Americans" from registered mark for "Puritan Sportswear the Choice of All Americans" held not to alter commercial impression of mark) with ILCO Corp., 527 F.2d at 1224 (change of mark from "Home Protection Hardware" to "Home Protection Center" held to create different commercial impression).

130.    Where the addition of a word has been held not to alter the continuing commercial impression of a mark, the new word has clearly conveyed the same impression as the word originally used.  Thus, the word "bank" was held to create the same commercial impression as the word "security," so that the use of

"American Security Bank," could be tacked onto the earlier use of "American Security." <u>American Security Bank</u>, 571 at 567.

131.    With these precedents in mind, the court turns to determine the issue of whether Plaintiff's use of the additional word "Manhasset"(or the prior use of the words "at Manhasset") can be "tacked on" to the originally registered "Americana" mark so as to defeat a claim of abandonment.  The question, easily framed, but not easily resolved, is whether the two uses convey the same "continuing commercial impression."  The court holds that they do not.

132.    First, although the terms are aurally similar, both using the word "Americana," there are aurally and visually dissimilar because of the addition of a new word. Adding to the visual dissimilarity is the fact that the marks use different styles and fonts.  <u>Accord</u> <u>Keycorp v. Key Bank & Trust</u>, 99 F. Supp.2d 814, 820 (N.D. Ohio 2000) (noting that change in names created different aural and visual impressions) Specifically, Plaintiff used the term "Americana" in a completely different font from its later use of "Americana Manhasset," and the two uses bear no stylistic resemblance to each other.  Moreover, the addition of the geographic identifier necessarily creates a new impression.

133.    Further, the court is not convinced that tacking is appropriate simply because there is a word added to the term "Americana." While Plaintiff has consistently incorporated the word "Americana," in its name, the court concludes that the terms "Americana" and "Americana Manhasset" do not convey the same commercial impression.  These two marks necessarily create a different impression, with the latter term conveying a specific location, while the former conveys only an image of things culturally related to America.  <u>Accord</u> <u>Keycorp</u>,

99 F. Supp.2d at 820 (continuing use of single term "Key" insufficient to create continuing commercial impression where additional words changed meaning of name). In light of this conclusion, the court holds that Defendant has demonstrated, by clear and convincing evidence, both non-use, and lack of intent to resume use of the term Americana. Accordingly, the court holds that the trademark Registration No. 1,771,826 is ordered to be cancelled. The court expresses no opinion as to the validity of Plaintiff's 2007 effort to acquire a more broad registration with respect to the Americana name, as that matter remains pending before the PTO.

134. The court's holding does not affect Registration No. 2,648,932, for the name "Americana Manhasset."

135. The court's holding on the issue of abandonment requires dismissal of Plaintiff's trademark infringement claim as to the alleged infringement of the Americana name, and makes it unnecessary to consider Defendant's claim of fraud on the PTO.

136. The court turns to consider whether Plaintiff can prevail on its claim of trademark infringement with respect to its Americana Manhasset name. In light of the fact that this infringement claim, like a claim of unfair competition, hinges upon a finding of likelihood of confusion, the court considers this dispositive issue below.

III.   Unfair Competition

137. A claim of unfair competition does not require Plaintiff to have a registered trademark. While Plaintiff need not show a registered mark to prevail on its claim of unfair competition, it must show that its mark is "sufficiently 'distinctive' to

distinguish [its] goods from those of others." Star Indust., 412 F.3d at 381. In addition to distinctiveness, an unfair competition plaintiff must show likelihood of confusion to prevail. Such "likelihood" refers to a "probability of confusion, not a mere possibility." Star Indust., 412 F.3d at 383 (citations omitted).

138. With respect to the issue of distinctiveness, the court notes that the term Americana Manhasset is an incontestable trademark. This satisfies the first prong of a trademark infringement claim, and also weighs in favor of a finding of distinctiveness in the unfair competition context. See 24 Hour Fitness USA, Inc. v. 24/7 Tribeca Fitness, LLC, 447 F. Supp.2d 266, 272 (S.D.N.Y. 2006). As to the name "Americana," the common nature of the term detracts considerably from a finding of inherent distinctiveness. Id.

139. As to distinctiveness in the market where Defendant does business, California, there is none. There was no evidence whatever that Plaintiff's marks, Americana or Americana Manhasset, are in any way distinctive in the California market.

140. Even assuming that Plaintiff's marks pass the distinctiveness threshold, there was no evidence introduced at trial sufficient to hold that there is likelihood of confusion that could sustain either a trademark infringement claim as to Americana Manhasset or an unfair competition claim as to Americana or Americana Manhasset.

141. Likelihood of confusion exists only if "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." Gruner + Jahr USA Pub. v. Meredith Corp., 991 F.2d 1072, 1077 (2d Cir. 1993).

142.    In addition to confusion as to source, likelihood of confusion encompasses likelihood of confusion as to "sponsorship, affiliation, connection, or identification."  Star Indust., 412 F.3d at 383.

143.    The factors to consider when determining likelihood of confusion are set forth in the seminal case of Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492 (2d Cir. 1961).  Star Indus., 412 F.3d at 384.

144.    The Polaroid factors are: (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products; (4) actual confusion; (5) the likelihood that plaintiff will bridge the gap, if any, between the markets in which the products are sold; (6) the defendant's good faith in adopting the mark; (7) the quality of defendant's products, and (8) the sophistication of purchasers.  Polaroid, 287 F.2d at 495.

145.    The Polaroid factors are not an exhaustive list, and no one factor is  dispositive. Instead, "each factor must be considered in the context of others, and balanced to determine whether a likelihood of confusion exists."  Lang v. Retirement Living Pub., Co., Inc., 949 F.2d 576, 580 (2d Cir. 1991).

146.    When considering the strength of a mark, the court considers whether the mark has a "tendency to uniquely identify the source" of a product.  Star Industries, 412 F.3d at 384.  As part of this inquiry, the court considers whether the mark is generic, descriptive, suggestive or arbitrary/fanciful.  Id.  Generic names are the weakest, and arbitrary/fanciful names are the strongest.  Descriptive marks are entitled to protection only to the extent that they have acquired secondary meaning, i.e., if consumers have come to associate a product or service with the

mark giving the mark its own separate meaning, sometimes referred to as "acquired distinctiveness." Star Indust, 412 F.3d at 382

147. As an incontestable trademark, the term Americana Manhasset is entitled to be viewed as a strong mark. Brennan's, Inc. v. Brennan's Rest., LLC, 360 F.3d 125, 131 (2d Cir. 2004). The name "Americana," standing alone, is neither arbitrary nor fanciful; it is at best, suggestive.

148. Although the Plaintiff's names fall on the stronger end of the spectrum, there was little evidence that the strength of the marks should be dispositive here. Plaintiff introduced no evidence, anecdotal or survey, showing that any consumer associated either the term Americana or Americana Manhasset with Plaintiff's shopping center as a particular source of goods, either in the Manhasset market, or indeed, any market within the country. With respect to the Americana name, the mark is weakened by the frequency with which the term is used, and the variety of goods and services to which it might apply. Accordingly, as to the first Polaroid factor, the court holds that while the marks might be considered somewhat strong, this factor does not weigh heavily in favor of a finding of confusion.

149. The second factor, similarity of the marks, considers the overall impression created by the marks, and not merely the words used. Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 744 (2d Cir. 1998). Although the parties both use the word "Americana," their marketing materials create very different impressions. Since Plaintiff long ago abandoned use of the term Americana, standing alone, there is no evidence of current usage of that term. As to the Americana Manhasset name, Plaintiff's uses the name in block letters with no

29

logo.  Defendant uses the name "Americana at Brand," in a way that gives a completely different impression.  Specifically, Defendant uses its name along with a logo that is reminiscent of the fountain that is located at the center of its development.  Because the use of the parties' names create distinctly different impressions, this factor weighs against favor of a finding of confusion.

150.   The factor of proximity addresses the extent to which the parties compete with each other.  Brennan's, 360 F.3d at 134;  Medici Classics Prods., LLC. v. Medici Group, LLC, 590 F. Supp.2d 548, 555 (S.D.N.Y. 2008).  In connection with this factor, the court considers both market proximity and geographic proximity. Brennan's, 360 F.3d at 134.  The court holds that the factor of competitive proximity weighs against a finding of likelihood of confusion.  While the parties share some common tenant stores, this is completely insignificant given the geographic distance.  Additionally, neither party has evidenced any intent to enter the other's geographic market.  Thus, it is unlikely that there will be any bridging of the gap in the parties' markets.  See Brennan's, at 134 (noting "high hurdle" required to show that restaurants in New Orleans and New York compete for the same customers).

151.   Moreover, the great geographic distance between the parties' centers makes the sharing of customer bases practically impossible.  This is not a case like Lincoln Rest. Corp. v. Wolfie's Restaurant, 291 F.2d 302, 302-03 (2d Cir. 1961), where, despite geographic distance, the parties had a somewhat shared customer base. Here, there is absolutely no evidence of customer overlap.  While there are clearly people in New York and California who shop at the Gap, or other stores common to the parties' centers (and indeed, throughout the country), these same people do

not interchange their shopping trips between Manhasset, New York and Glendale, California. Nor do these people leave their homes to shop, and find themselves confused as to whether they are headed to Long Island or Glendale. Even if the parties' centers were geographically closer, the overwhelming differences between the centers, as described above, would weigh against the proximity factor. The factor of proximity weighs heavily against a finding of confusion.

152. The court's factual findings regarding actual confusion show that there was no such confusion, and this factor weighs in favor of Defendant.

153. The court's factual finding that Defendant adopted the name "Americana at Brand," in good faith weighs in favor of Defendant.

154. Both parties house tenant stores that sell a variety of high quality products. The lack of geographic proximity makes this factor insignificant.

155. The extreme distance between the parties' centers makes any finding as to consumer sophistication unimportant. To the extent this factor is considered, the court holds that a consumer of high end and luxury items is a sophisticated consumer who is not likely to be confused by the parties' use of the names "Americana and Brand," and either "Americana" or "Americana Manhasset."

156. When considering the Polaroid factors as a whole, the court holds that it is not likely that there will be any confusion arising from Defendant's use of the Americana at Brand name.

157. The court's holding requires dismissal of any claim of trademark infringement or unfair competition under the Lanham Act with regard to Defendant's use of the Americana at Brand name as to the names "Americana" and/or the name "Americana Manhasset."

IV.    Cybersquatting Claim

158.    The "cyberpiracy" provision of the Lanham Act makes it unlawful to, _inter alia_,

register or use a domain name that is identical or confusingly similar to a name

that is distinctive, famous or a registered trademark.  See 25 U.S.C. §1125(d).

Such a claim can prevail only if Plaintiff can prove, _inter alia_, a bad faith intent to

profit on the part of Defendant in registration of its domain names, and that the

parties' domain names are confusingly similar.  See Cintas Corp. v. Unite Here,

2009 WL 4577027 *2 (2d Cir. 2009); Sporty's Farm, LLC v. Sportsman's Mkt.,

Inc., 202 F.3d 489, 497-99 (2d Cir. 2000); Dudley v. Healthsource Chiropractic,

Inc., 585 F. Supp.2d 433, 438 (W.D.N.Y. 2008).

159.    The facts found by the court with respect to Defendant's good faith adoption of

the Americana at Brand name apply with equal force to the registration of its

domain names, each of which use the full name "americanaatbrand."

160.    Additionally, Defendant's domain names are easily distinguished from Plaintiff's

domain names, so that there will be no confusion.

161.    For the forgoing reasons, Defendant is entitled to judgment on the Plaintiff's

claim of cybersquatting, and that claim is therefore dismissed.

V.    State Law Claims

A.    Common Law Unfair Competition

162.    Plaintiff's common law claim of unfair competition requires proof of the same

elements as are required under a Lanham Act trademark and/or unfair competition

claim.  The court's dismissal of the Federal Lanham Act claims require dismissal

of the parallel state law claim of unfair competition.  See Real News Project, Inc.

v. Independent World Television, Inc., 2008 WL 2229830 *6 (S.D.N.Y. 2008);

Paco Sport Ltd. v. Paco Rabanne Parfums, 86 F. Supp.2d 305, 328 (S.D.N.Y. 2000).

B.    Dilution: New York General Business Law §360-l

163.    Section 360-l of the New York State General Business Law allows a court to grant injunctive relief in cases where there is a likelihood of dilution of the distinctive quality of a mark.  N.Y. Gen. Bus. L. §360-l.  A claim of dilution requires a plaintiff to show: (1) that it possesses a distinctive mark capable of dilution, and (2) that there is a likelihood of dilution.  Mead Data Central, Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1029 (2d Cir. 1989).  A showing of likelihood of confusion is not necessary to prevail on a dilution claim.  Pfizer, Inc. v. Y2K Shipping & Trading, Inc., 2004 WL 896962 *8 * (E.D.N.Y. 2004).

164.    To support a dilution claim, the parties' marks must be substantially similar, and in the absence of such similarity, there can be no claim of dilution.  Mead, 875 F.2d at 1029.

165.    Distinctiveness, in the context of dilution, is similar to strength, in the context of a Lanham Act claim.  Id.; 24 Hour Fitness, 447 F. Supp.2d at 288; Paco Sport, 86 F. Supp.2d at 328.  Even if a mark is distinctive in its limited geographic area, it is not necessarily distinctive elsewhere.  Id.  As discussed above, the common nature of the term "Americana," results in Plaintiff's mark being categorized as weak.  Even assuming that Americana or Americana Manhasset were strong, Plaintiff would have to show a likelihood of dilution to prevail on this claim.  As demonstrated below, no such showing has been made.

166.    Dilution can take the form of "blurring" or "tarnishment." Plaintiff makes no claim that its names are in any way tarnished by Defendant's sale of inferior goods or services. Nor could any claim have been made. The facts at trial established the high quality of Defendant's development. The only claim to consider, therefore is whether Plaintiff has shown dilution by blurring.

167.    Blurring has been defined as the "whittling away of an established trademark's selling power and value through its unauthorized use by others upon dissimilar products." Mead, 875 F.2d at 1030 (citation omitted). To determine the likelihood of blurring, courts consider: (1) the similarity of the marks; (2) the similarity of the products; (3) the sophistication of consumers; (4) predatory intent; (5) renown of the senior mark, and (5) renown of the junior mark. Malletier v. Dooney & Bourke, Inc., 561 F. Supp.2d 368, 382 (S.D.N.Y. 2008).

168.    A claim of blurring must be supported by some "mental association" between the parties' use of similar marks. Blurring occurs when a plaintiff's mark loses some of its ability to identify plaintiff's goods because the public begins, as a result of defendant's use of its name, to associate plaintiff's name with a different source. Pfizer, 2004 WL 896952 *8; Paco Sport, 86 F. Supp.2d at 328.

169.    The evidence at trial was completely devoid of any facts that might support a claim of blurring occurring as a result of Defendant's use of the Americana at Brand name. As previously found by the court, the marks differ, the parties' centers differ, consumers are sophisticated and there was a complete lack of predatory intent. Additionally, to the extent they were offered to support a showing of a mental association between the parties uses of their names, Plaintiff's proffered instances of actual confusion are no more convincing with

34

respect to its dilution claim than they were with respect to its other claims.  <u>See</u> <u>24 Hour Fitness</u>, 447 F. Supp.2d at 288.  The dilution claim is dismissed.

C.    <u>General Business Law Sections 349 and 350</u>

170.    Plaintiff's final state law claims, that Defendant's use of the Americana at Brand name violates Sections 349 and 350 of the New York State General Business Law are also dismissed.  Such claims, which prohibit deceptive business practices and false advertising, require a showing of consumer harm that is completely absent from this, and most private disputes alleging trademark infringement and/or unfair competition.  <u>See</u> <u>DO Denim, LLC v. Fried Denim, Inc.</u>, 634 F. Supp.2d 403, 408-09 (S.D.N.Y. 2009); <u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, 2004 WL 2158120 *9 (S.D.N.Y. 2004).

171.    No evidence established at trial established facts to support any claim of consumer, or public injury necessary to support any deceptive act or false advertising claim pursuant to Sections 349 and/or 350 of the New York State General Business Law.  Moreover, there was nothing even remotely deceptive about Defendant's adoption and/or its use of the Americana at Brand name.

D.    <u>Unjust Enrichment</u>

172.    A claim for unjust enrichment must establish that: (1) defendant was enriched; (2) at plaintiff's expense and (3) that equity and good conscience require restitution. <u>Kaye v. Grossman</u>, 202 F.3d 611, 615-16 (2d Cir. 2000).

173.    Here, there was no evidence of Plaintiff suffering any financial harm.  More importantly, there is no evidence that Defendant acted in any way other than good faith in its adoption of its name.  Accordingly, equity and good conscience demand only that this claim be dismissed, and not that Plaintiff prevail.

VI.    Defendant's Request for Attorneys Fees

174.    Defendant seeks an award of fees pursuant to the Lanham Act, which provides for

a fee award in "exceptional cases."  15 U.S.C. § 1117(a); see e.g., Diamond

Supply Co. v. Prudential Paper Prods. Co., Inc., 589 F. Supp. 470, 476 (S.D.N.Y.

1984).

175.    The court has considered Defendant's argument in support of a fee award.

Although the court has found in favor of Defendant on all claims, and has found

all of Plaintiff's claims to be weak, the court declines to order an award of

attorneys' fees in this matter.

## CONCLUSION

For the  foregoing reasons, Defendant is entitled to judgments as to all of Plaintiff's

claims.  Defendant is granted judgment as to its claim that the name Americana, standing alone,

has been abandoned by Plaintiff.  Accordingly, Plaintiff's Trademark  Registration No.

1,771,826 is hereby ordered to be cancelled.  Defendant's claim for attorney's fees is denied.

SO ORDERED.


_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE


Dated:  Central Islip, New York
        June      , 2010